# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) ) ) |
| *Plaintiff,* | ) ) ) No.: |
| v. | ) ) ) |
| IL CREATIVE GROUP, LLC ("ICG") | ) ) ) |
| *Defendant.* | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, Shelter Mutual Insurance Company, ("Shelter"), by and through its attorneys, Lindsay, Pickett & Postel, LLC, and for its Complaint for Declaratory Judgment against the Defendant IL Creative Group, LLC ("ICG"), alleges as follows:

### INTRODUCTION

1. Shelter seeks a declaration that it does not owe any duty to defend or indemnify ICG in an underlying lawsuit brought by Vernice Hubbard ("Hubbard") under any of the policies of insurance Shelter issued to ICG.

### PARTIES

2. Shelter is a mutual insurance company organized under the laws of the state of Missouri, duly licensed and authorized to issue policies of insurance in St. Clair County, Illinois.

3. ICG is a limited liability company organized under the laws of the State of Illinois with its principal office in Duluth, Georgia.

4. ICG's member is a citizen of Georgia.

5. ICG is real estate management company that owned the home located at 1609 Mullens Avenue in Cahokia, Illinois, ("Residence") during the term of the lease.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. Although this complaint seeks no monetary damages—rather, it seeks only declaratory relief—the effect of granting that relief would be to void coverage for a loss exceeding $75,000 in value.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that the events giving rise to the claim occurred in this judicial district, and that ICG's member was at all relevant times, a citizen of this judicial district.

## THE UNDERLYING LAWSUIT

8. On May 1, 2019, Hubbard filed a civil suit against ICG in the Circuit Court of St. Clair County, case no. 19-AR-415 ("the underlying complaint" or "the underlying lawsuit"). A copy of the underlying complaint is attached as **Exhibit A**.

9. The underlying complaint alleges that on August 27, 2018, Hubbard executed a lease for a home ("the Residence") owned by ICG and managed by Riverside Real Estate, LLC ("Riverside") located at 1609 Mullens Avenue in Cahokia, Illinois, with the lease term starting September 10, 2018 until March 31, 2018. Ex. A ¶ 7.

10. The underlying complaint alleges that the Lease required Hubbard to "report immediately any evidence of mold to [Riverside] and maintain a clean environment that discourages mold." Ex. A ¶ 8.

11. The underlying complaint alleges that soon after Hubbard moved in on September 10, 2018, she "began to experience symptoms consistent with exposure to mold including respiratory issues." Ex. A ¶ 14.

12. The underlying complaint alleges that on September 18, 2018, Hubbard notified Riverside that she believed the Residence's basement was full of mold. Ex. A ¶ 18.

13. The underlying complaint alleges that Riverside "admit[ted] that it had discovered mildew in the attic" and that "it had placed a fan in the attic to dry it out and that due to extreme cold we are having now, anything alive will be dead, germ wise." Ex. A ¶ 36.

14. The underlying complaint further alleges that on or about February 1, 2019, after the ceiling of the living room had collapsed, she insisted that Riverside engage a mold remediation specialist. Ex. A ¶ 38-39.

15. The underlying complaint further alleges that the Mold Inspection and Testing (MIT) found elevated mold conditions in the home and that professional remediation was required. It also noted that the mold and ceiling collapse had likely occurred as a result of the leaking roof. Ex. A ¶ 42.

16. The underlying complaint further alleges that on February 12, 2019, a second mold inspection performed by Absolute Clean showed the same results as the first MIT and concluded that the Residence's attic was contaminated with mold. Ex. A ¶ 43-44.

17. Hubbard's complaint alleges three counts against ICG and Riverside: breach of implied warranty of habitability; negligence; and violations of the Illinois Consumer Fraud Act and Deceptive Businesses Act. Ex. A.

18. Based on the allegations in the underlying claim, ICG first had notice of the Residence's mold conditions on September 18, 2018. Ex. A. ¶ 18.

19. ICG had additional notice of the Residence's mold conditions on February 1, 2019 through Hubbard's insistence that "Riverside engage a mold remediation specialist to inspect the Residence." Ex. A. ¶ 39.

20. This underlying lawsuit was filed on May 1, 2019. Ex. A.

21. ICG first notified Shelter of these claims on July 15, 2019.

### THE SHELTER POLICY

22. Shelter issued a general liability designated premises policy to ICG, policy no. 12-31-10246293-4, effective August 3, 2018 through August 3, 2019, with limits of $1,000,000 per occurrence and $1,000,000 in the general aggregate ("the Shelter policy"). A true and correct copy of the Shelter policy is attached hereto as **Exhibit B**.

23. The Shelter policy provides in pertinent part, as follows:

### SECTION I- COVERAGES

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion investigate any "occurrence" and settle and claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** of **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes placed in the "coverage territory";

4

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) Prior to the policy period, no insured listed under Paragraph 1. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or property damage" had occurred, in whole or in part.

* * *

**2. Exclusions**

 This insurance does not apply to:

 **a. Expected Or Intended Injury**

 "Bodily injury" or "property damage" expected to intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

 **b. Contractual Liability**

 "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.****

* * *

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * *

**2. Duties in The Event of Occurrence, Offense, Claim or Suit**

 a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

* * *

## FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to **Paragraph 2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability:**

    **2.** **Exclusions**

        This insurance does not apply to:

        **Fungi or Bacteria**

        a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:**

    **2.** **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a. "Personal and advertising injury" which would not have occurred, in whole or in part, but for the actual alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

\* \* \*

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*    *    *

## COVERAGE ALLEGATIONS

### No Duty to Defend or Indemnify ICG

24. Shelter restates and incorporates the allegations of paragraphs 1 through 24 above as though set forth fully herein.

25. Shelter has no duty to defend or indemnify ICG against the underlying complaint that alleges (1) breach of implied warranty; (2) negligence; and (3) consumer fraud for one or more of the following reasons pleading hypothetically or in the alternative:

    a. The underlying complaint does not allege an occurrence resulting in property damage or bodily injury and, instead, seeks to recover purely economic loss.

    b. The underlying complaint does not allege a personal and advertising injury.

    c. The Shelter's policy exclusion for contractual liability negates any potential for coverage that may otherwise exist.

    d. The Shelter policy's exclusion for "expected or intended injury" negates any potential for coverage that otherwise might exist.

    e. The Shelter policy's exclusion for fungi or bacteria negates any potential for coverage that may otherwise exist.

    f. In addition, the Shelter policy (Section IV, 2. Duties in the Event of an Occurrence, Offense, Claim, or Suit) requires the insured to notify Shelter as soon as practicable of an occurrence or an offense which may result in a claim.

    g. Shelter has no duty to defend or indemnify ICG because they collectively failed to satisfy their duties of the policy in the event of occurrence, offense, claim or suit to notify Shelter as soon as practicable of Hubbard's mold complaints or of the mold testing.

26. For these reasons, the policy does not provide potential coverage to ICG for the underlying lawsuit and Shelter does not owe any duty to defend or indemnify ICG against the underlying lawsuit.

27. There may be other bases upon which Shelter may properly deny coverage and Shelter reserves the right to plead them in the future.

WHEREFORE, the Plaintiff, Shelter Mutual Insurance Company, prays that this Honorable Court enter an order finding and declaring that it does not owe any duty to defend or indemnify Defendant ICG, in the underlying litigation, and for such other and further relief as this Court deems fair and just under the circumstances.

Respectfully submitted,
LINDSAY PICKETT & POSTEL, LLC

*Christopher J. Pickett*

_____
By: Christopher J. Pickett, One of the
Attorneys for Shelter Mutual Insurance

Christopher J. Pickett
cpickett@lpplawfirm.com
312.596.7779
**LINDSAY PICKETT & POSTEL, LLC**
10 S. LaSalle Street, Suite 1301
Chicago, IL 60603
Fax: 312.629.1404